Next case we'll hear will be Barnav versus Board of School Directors of the Panther Valley School District, number 15-3904. Next case we'll hear will be Barnav versus Board of School Directors of the Panther Valley School District, number 15-3904. Good morning, gentlemen. Good morning, George. Jonathan Phillips on behalf of Plaintiff John Farnon. And by way of housekeeping, I think I've reserved three minutes for rebuttal. That would be great. I suppose it would be impertinent for me to start anywhere other than with the questions that the court had asked us to focus on. You can start anywhere you want. Now, whether you let me continue is in front of that question. Well, the first of two items that the court directed our attention to were the impact of Newcastle Cathy v. Hartford and Cameretta, if I'm pronouncing that right, versus Green, on the issue of whether or not appellees were required to file a cross-appeal in order to challenge the lower court's conclusion that Mr. Barnav's First Amendment rights had been violated. I would submit for the court's consideration that such a cross-appeal was required. Newcastle is fairly explicit in terms of mandating that an appeal be filed if there's an attack on the judgment. And I would argue that asking this court to reverse the district court's finding with respect to constitutionality. But isn't the winning party entitled to make any arguments in favor of preserving the judgment in this court? Yeah, but I think that goes beyond merely stating a different theory of supporting the judgment. And in fact goes to, in the language of Newcastle, either increasing a party's rights or altering the nature of the judgment. And I think the Cameretta case actually works in lockstep with the pronouncements of Newcastle. Justice Kagan talks about, all of her language is couched in terms of, we're taking an appeal. We're challenging the underlying, in this case I believe it was the Ninth Circuit's opinion, with respect to constitutionality. And in fact the whole point of the kind of petition that Justice Kagan said you could take was to turn around and reverse the finding of constitutionality. And to, in essence, challenge the lower court's judgment. Now I understand that the court explicitly declined to talk about whether or not that kind of appeal would be permitted here. And they confined their ruling to simply the Supreme Court level of analysis. But I would submit that those two cases were... They didn't say we couldn't do it. What's that? The court didn't say that a court of appeals could not do it. No, and they intimated that she wasn't necessarily in favor of them doing that. I believe she dropped that in a footnote, which I found kind of surprising because it seemed like the whole buildup of the case was to say, hey look, you get to look at this stuff because we want to give people constitutional guidance, even those who have had a favorable finding with respect to immunity at the lower court. Well, the quote that I found interesting was on 2033 she says, our decision today does no more than exempt one special category of cases from our usual rule against considering prevailing parties' petitions. So, if the usual rule is against that, then is she creating an exception that we should consider for qualified immunity cases? Personally, I think so. Because I think the purpose of providing constitutional guidance to people that were in the position of the school official in the Camerata case or of the school board in our case, they would be well served by having this kind of constitutional guidance. After having gone through her entire analysis, as I said before, she then kind of undermines it by saying, well, if I can find the language in here precisely, we'll hold off because colloquially speaking, she said nobody really pays attention to district courts anyway, so we're not going to expand that little exception, if you will, beyond our level. And I think she said we specifically declined to address it with respect to circuit courts. So it's an open question. I think she left it that way. I would invite the court to take that type of remedy, simply because I think her overarching point is that it would help people out to have this kind of guidance. It makes sense. What's that? Constitutionally permissible? Sure. I mean, that was the whole point of the case, and then she kind of cut it short. We get to do it, but nobody else can. Let's talk about clearly established. So when you look at Taylor, since we're in the Supreme Court, might as well stay there. Okay. So when you look at Taylor and what the definition of clearly established is, the district court here made a particular finding with regard to the First Amendment, but then said it wasn't clearly established. Isn't the question of whether it was clearly established really the linchpin of the entire question before us now? And if it's not clearly established, why shouldn't we affirm? One, and it's not really discussed in any of the cases, why you should is because, as a practical matter, people that are in the position of my client find themselves without any kind of remedy in cases like this. So I've got a district court opinion that takes, I don't know, 15 or 20 pages, beating up the Panther Valley School District as to how they violated my client's constitutional rights, and then they say, oh, never mind. Well, that's the law we're dealing with, though. The district court didn't err, did they, in considering clearly established and the substantive right? No, I think they took the exact analysis that they were supposed to take. I understand it might be difficult for your client, but can we just start off at a really sort of elementary point? How would you articulate the clearly established right here? What is the clearly established right? He has the right to not be permanently banned from school property, including not only school board meetings, but extracurricular activities or setting foot on Panther Valley School District property for any purpose, with zero alternative provided for him. And the school district came down on him like a hammer in terms of possible remedies that they could have offered him. I will concede that there were no Third Circuit pronouncements that guided the school board. Right, well, that's an important point. But that's just the beginning, right? Because I want to bring it back to Taylor to dovetail Judge Shigeru's point. Taylor said, the way I read Taylor is, even if the Third Circuit had spoken, right, that wouldn't be enough, because it wouldn't satisfy the robust consensus of cases of persuasive authority. And in the absence of a robust consensus of cases of persuasive authority, or Supreme Court authority, right, so how do you come to the conclusion that it is clearly established? I understand your substantive point that your initial response is, yes, the permanent ban is the violation. But for us to give you the relief you seek, right, we'd have to say, taking a snapshot at that point in time, right, that right against the permanent ban was clearly established. And it would require us, according to Taylor, which is the standard that, you know, a 2015 Supreme Court case, the standard that we would have to apply, there'd have to be a robust consensus of cases of persuasive authority. At the time, by my count, if I'm wrong, you'll tell me, there was one circuit case going one way and one circuit case going the other way on this issue. So I'm not getting the robust consensus of persuasive authority. So how can we determine that it's clearly established and then give you the relief that you seek? Here's kind of the road map, and here's the way I looked at it. I asked myself, well, how would, you know, if I had been a Panther Valley solicitor, and they said, gee, Jonathan, what should we do here? I would take the basket of, I believe it was the four cases that the district court looked at, two of which. The district court cases? Yes. Naturally. But they predated the events in question with respect to Mr. Barnum. Two of them came afterwards. The two that came beforehand pretty clearly say, look, you can't toss this guy out. And the Heminsky case is one of them where they, it was in the context of a court system, but the same message holds. You cannot simply leave somebody remedyless and not able to participate in whether it's the court process or school board meetings. So to get back to my analogy, what I would do if I had been the Panther Valley school district solicitor, I would have said something along the lines of, look, you can go ahead and do this, but there is an awful lot of case law out there that says that you can't. And, you know, whether you refer to it in terms of a robust consensus or say that it's beyond debate, however you want to phrase that standard, the school board had a considerable amount of exposure in doing what it did. I don't know, counsel. I mean, as Judge Greenway pointed out, it seemed to me it had two circuit cases, one going each way. And even our Galena and Eigenlob cases, you know, granted they were temporary bans, but we said fine. You know, clearly established is a pretty high bar, you know, and just be able to cherry pick a couple of cases and say these are the good ones and these aren't the good ones. I don't know if that makes it robust or clearly established. With respect to the Lovern case, by the way, being the circuit case that goes in the other direction, that struck me as being fairly distinguishable in terms of the context in which it arose. So they've got somebody who's barred from school property for being basically a pain in the tail, as my father would say. But that arose in the context of smooth functioning of the school. I forget exactly how they phrased it, but basically said we want to have a tranquil educational process or words to that effect. That didn't arise in the case of, you know, a school board meeting where you expect to have contentious debate or issues that might require some community discussion. And, you know, that's the sort of thing that happened to my client. Basically, the school board, and there's no shortage of local parochialism in our little neck of the woods up in Schuylkill and Carbon County. They had a guy that they didn't like. They didn't like what he had to say. They didn't like that he was questioning what they were doing. They found an excuse to get him off of school property, and they came down, and they hammered him. And that's what happened in this case. What do you make of the claim against the school board and the fact that the district court judge applied qualified immunity to the board? That was incorrect. And one of the avenues of relief I'm asking for is that at a minimum that this court direct a vacation of that finding with respect to qualified immunity with respect to the school board. Now, counsel, you stand up and say you waived it. How are you going to respond? We have consistently, in literally every filing after the amended complaint in this matter, have contended throughout that all of the defendants in this case are not entitled to any kind of qualified immunity, and we've been consistent about that. They're telling me I'm out of time. All right. We'll hear that in rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Thomas Specht, and I represent the appellees in this case. I'm going to also just jump right into the questions from the panel, the first one being the necessity of filing a cross-appeal in order to challenge the Court's conclusion that Barna's First Amendment rights were violated by the permanent ban on his attendance and ability to enter school property. And the way that I look at Newcastle, and I think the way that other courts have looked at it, is that I think that what they look at is the judgment itself. We got summary judgment in the lower court. We won on the merits. We are seeking to use an alternative basis for affirmance of that judgment. They don't look deeper than the judgment itself. The judgment is what matters. And when we're not seeking to change a judgment from a dismissal without prejudice to a dismissal with prejudice, which we're not doing here, we won on the merits. And if this Court were to find that the- Are you seeking to abrogate the finding of a constitutional right? We are, we are. But, Your Honor, I don't think courts look at it that deeply for purposes of cross-appeal purposes. They look at it less deeply? Well, no, they look to the judgment itself. They don't look at to, you know, that a constitutional right was violated or that you won on this theory or now you're winning on this theory. They look at if you win on either theory, the judgment is still the same. That's the way they're looking at it. And I have a few cases- So all we need to know is that the complaint was dismissed. Right. Right, Your Honor. And, you know, the Rivero case from the Ninth Circuit was the most similar case that I could find. It's a 316 F. 3rd 857. And in that case, summary judgment was granted to the appellees based on lack of causation in a First Amendment retaliation case. And then on appeal, the district, the appellate court decided the question of qualified immunity. And they likened both findings to a judgment on the merits. Right, but our posture is different here, right? I mean- It's reversed. Right. And also it is somewhat similar to Camretta, right? Well, Camretta, I would argue, is a similar case to our case. It provides analogous support for this court to address the issues, whether it wants to do so, calling it an additional grant in support of affirmance. And the reasons in Camretta that would support it would be that qualified immunity cases are a little different, that guidance should be provided to government entities, and it would support this court hearing the issue regardless of a cross-appeal. That's what I took Camretta to support. It really wasn't on point with whether or not we should take a cross-appeal, but like you said to appellant's counsel, it doesn't foreclose you from addressing that issue. As a matter of fact, it noted that you might be able to. But it also said in there, which I thought was interesting, was that district court cases have no effect on future conduct for a board or a government entity, and it might cause there to not be a case of controversy down the line. So you put note seven to inertia benefit with regard to clearly established. Well, it might also prevent us from taking a cross-appeal in that it wouldn't affect our conduct down the road, and we won the case. Let's assume we accept your invitation and go there. Is it your position that a lifetime ban is consistent with the First Amendment? Well, Your Honor, I do, and I think when we say permanent ban, it was a permanent ban on his presence on the property because he had been so disruptive. It was a forever ban. Right, but he still had alternative means to communicate with the board and to learn what was going on with the board. He could have written letters with questions, and they would have addressed the questions. And that's consistent with your view of the First Amendment? Well, the public debate section of these board meetings, that's exactly what it was. It was asking questions and having those questions addressed. And the question is, is it narrowly tailored? Are there ample alternatives open for it to be a reasonable time? Is that really an ample alternative, what he's got now? I mean, part of these open meetings is allowing people to stand up and try to persuade their not only board members but people in the audience. He doesn't have that. That's true, Your Honor. What you've given him is a chance to ask a question. And get answers. Your Honor, this is also a little bit different in that it's a school property where there are children, where there are other people, where there are other persons who could be injured or hurt. Any public forum, you're going to have kids, elderly. But the school cases, Your Honor, the school cases like Laverne, and actually there are plenty of school cases in the Third Circuit too, like Cole v. Montague, where they permanently ban parents or other individuals from coming onto school property in order to protect individuals. You know, I think in Cole v. Montague, I think it was a parent and an athletic director. He had threatened the athletic director, and there was a ban on the parent from coming onto the property. And that's what we have here. We have a school property. If anything, this case is more like Laverne than any other case. Isn't the posture you want us to determine this case, judges, focus on clearly established? Because I'm actually surprised at the position you're taking on the First Amendment. I mean, it should be like clearly established is it? Because once you get into a substantive discussion of whether his First Amendment rights are violated, then it's at best equivocal, isn't it? Well, I do think there are questions. It's an open question. That's why we're here before the court. But I think the most analogous case is that Laverne case that the court provided to us and other school property cases. Well, your adversary says Laverne is clearly distinguishable. Why isn't it? Well, I don't think it is distinguishable because it's a school property case where there was threatening behavior and the person was permanently banned from the school property. The only difference, and I'll admit this, the only difference is that even though he was banned from all school property, it wasn't in a situation where he was addressing a school board. It was more banning him from the property because he was threatening. He was just when his kid got cut from the basketball court. Right, exactly. And there's also not an 18-month interval. The fact is I understand that Mr. Barnum was banned some 18 months after he made the initial comments, correct? Well, I think it happened after he had been, again, more threatening, more obstreperous, more disruptive behavior at meetings. He had been given numerous warnings, told to tone down his conduct numerous times, provided numerous chances, and he still kept on doing it over a long period of time here where people were feeling scared, they were feeling threatened, they were feeling that meetings, the business of the school board, wasn't getting accomplished because of the disruption. So during those 18 months, no less restrictive bans were attempted by the school board, correct? Well, he was permitted to come to the meetings, correct, Your Honor, but eventually they did. But also, didn't he start to have a security guard? Yes, well, he was also fighting with the security guard and he wasn't counted by the security guard at all. So when you're threatening and people are afraid, I don't know if there is any more narrow tailing you can do than to say the person can't be on the property and provide him with ample alternatives such as, again, submitting written questions, getting written answers. He can even, in today's day and age, he can even Skype or be provided with that alternative. So I think there are ample alternatives available to him. It's just not maybe. . . We're good. Let me ask you about the issue of qualified immunity and supply to the board, which is clearly an error of law made by the district court judges. You're arguing that there was a waiver, correct? Yes. Well, was it incumbent on you in the district court to bring that case to the court's attention? Your Honor, I wasn't counseling the district court. I know I'm standing in for them right now. Well, they didn't, correct? They did not. So you want to use this as a sword and a shield? Well, I could see Your Honor's perspective on that, but he does have an obligation to preserve the issue himself. Your obligation came first, not yours, but your side. Whoever it was that represented the school board in front of the district court had an obligation under the rules to bring that authority to the district court. And had they done that, because the law is pretty clear, you can't apply qualified immunity to the board, we wouldn't have this problem, would we? We wouldn't, Your Honor. But it also was his obligation in the district court as well, and before this court in his opening brief, which he didn't do. And, you know, he finally did in his reply brief after I in Canada to the panel brought it up that qualified immunity couldn't be granted to the board. So in those cases, when we cite the authority, we think there should be a waiver found. He's never argued anywhere that a board as a government entity isn't entitled to qualified immunity. He's argued generally based on the fact that he would argue that the law was clearly established. So if we disagree with your forfeiture argument, what do we do with this? Well, I've argued in the brief that there isn't any evidence of Monell liability here. There has to be a deliberate choice, proven deliberate choice among alternatives, and I've cited case law that I cite in the brief that talks about can there be a deliberate choice or a deliberate indifference when the law isn't clearly established. And I would argue that there can't be. It's almost similar to. . . But that was never presented to the district court. I again would offer that as an alternative basis for affirmance, but that wasn't argued. We didn't have the opportunity to argue it for the obvious reasons that we've discussed. Unless the court has any other questions. I think you've hit all the points that I want to make. Okay, thank you. If I may briefly. . . Okay, so we've learned that a lifetime ban is consistent with the First Amendment. That's the first time I've heard that anywhere ever. So I'm somewhat surprised by that. I would submit that. . . You're surprised because you don't think his interpretation of Laverne is correct? Or you mean just his counsel comment? In this context here, I've never seen the notion that a lifetime ban from school property, from something that emanated from school board meetings, was constitutional. He indicated that the Panther Valley School District provided an ample alternative opportunity for Mr. Barnett to participate in the school governance process. This is where you get into the merits. Yeah, and I want to double back to clearly established as well. . . Feel free to double back right now. What's that? Feel free to double back. I think that what was out there in terms of authority was sufficient to have given the school board or their solicitor notice that the manner in which they were proceeding was not constitutional. That's not what the standard is, right? I mean, we've gone over this.  But how does what the proposition you've just stated work, given the fact that we've got to apply Taylor? I think that. . . Because the authority can't be interpreted as anything other than equivocal. You've got two districts. . . Tell me if my count is off, but as of 2010, 2011, you have a circuit court going each way and a district court. I believe that's correct. I guess my point is that there was authority out there to have put them on notice that what they were doing was incorrect and unconstitutional. With respect to the alternative opportunity provided to Mr. Barna, the letter that he got in October of, I want to say, 2011, give or take, said, Hey, you're gone. Stay off school property. Don't ever come back again. But if you have any questions, send us a letter. And I think even the letter was kind of snarky in tone and said, Well, and if we think it's meritorious, maybe we'll respond, was kind of the tenor of the letter. It was sort of a five-paragraph F.U. to Mr. Barna. In terms of whether or not he was a threat, he's not here in the courtroom today. He is maybe 80 years old, give or take, relatively infirm. He is nobody's idea of a threat. He's a lonely guy who goes to school board meetings, says there's nothing better to do, and that's what he's doing to entertain himself and to keep interested in life. His initial comment that was supposedly a threat in terms of, you know, well, I believe the school board president said, Hey, bring some of your friends to the next school board meeting. This was back in April of 2010. And he said, Well, you wouldn't like that because I have friends with guns. So which, you know, got a little laughter at the school board meeting. And then two weeks later, the school board president decides, Hey, you know what? You just handed me an opportunity to jack you up and keep you at a school board meeting, so I'm going to say you're a threat. Get out. Asking or stating in northeastern Pennsylvania that you have friends with guns is a spectacularly bland comment. I don't think you want to make that argument. No, my point is that gun ownership is commonplace. And for somebody to say that they have friends with guns is, I mean, when you have a rod and gun club every three miles as I'm driving from, you know, my hometown to my law office in Tamaqua, it's. But in fairness, counsel, there was more here. And the government does have a legitimate interest, I think, in keeping order in these meetings and moving forward. I mean, it seemed disruptive. I mean, you know, whether they did the right thing. He was inconvenient. He was not a threat to anybody. But that's. You're assuming that they had some knowledge of who he was and what he's about. I mean. Oh, sure. All these people. They all know each other. What do you think of counsel's argument, or he may argue, that they tried less restrictive means. They even tried hiring a security guard and talked to him and warned him not to behave this way. He kept up with these antics. At. At no time were his, I think, antics, if you will, any more or less disruptive than than anybody who would have contested your policy decisions that the board was making at any particular time. All right. Thank you, counsel. Thank you. And we'll thank counsel again for their argument, both written and oral.